UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                      CASE NO. 6:12-bk-14459-KSJ

**LIGHTHOUSE IMPORTS, LLC,**                CHAPTER 11

Debtor.
_____/

**LIGHTHOUSE IMPORTS, LLC,**

Plaintiff,

vs.

                                            Adv. Case No. 2013-ap-

**WERNER TSA, LLC, a Florida**
**limited liability company,**

Defendant.
_____/

## COMPLAINT

Plaintiff, **LIGHTHOUSE IMPORTS, LLC,** debtor-in-possession ("Debtor" or

"Lighthouse"), by and through its undersigned attorneys, hereby sues Defendant, Werner

TSA, LLC, a Florida limited liability company ("Werner"), pursuant to 11 U.S.C. §§ 544,

547 and 550, Rule 7001 of the Federal Rules of Bankruptcy Procedure, and objects to proof

of claim no. 41 filed by Werner, and in support thereof states as follows:

### NATURE OF ACTION

1.      This is an adversary proceeding to: (i) recover damages from Werner for its

breach of fiduciary duty; (ii) recover damages from Werner for breach of the Lighthouse

Imports LLC's Management Agreement and First Amendment to Lighthouse Imports LLC's

Management Agreement; (iii) avoid and recover preferential transfers under 11 U.S.C. §547

and §550; and (iv) object to Werner's proof of claim no. 41 that arises out of the Lighthouse

Imports LLC's Management Agreement and First Amendment to Lighthouse Imports LLC's

Management Agreement.

<u>**JURISDICTION, VENUE AND PARTIES**</u>

2.      On October 24, 2012 ("Petition Date"), Lighthouse filed its voluntary petition

for reorganization under Chapter 11 of the Bankruptcy Code.  No trustee or examiner has

been appointed, and Lighthouse is administering its case as debtor-in-possession pursuant

to sections 1107 and 1108 of the Bankruptcy Code.

3.      The Debtor owns and operates a car dealership in St. John's County selling

new Toyota and Scion automobiles and numerous brands of pre-owned vehicles under the

fictitious name of St. Augustine Toyota/Scion (the "Dealership"). The Dealership originally

opened in 1976.  In 2005, the Dealership was expanded to include a new state-of-the-art

sales, service, and parts center. The Dealership currently has a 6-car showroom, modern

service department, and an automotive parts boutique. Customers can utilize a shuttle

service, rental cars, Wi-Fi, a beverage bar, and a children's play area when visiting the

dealership. The principal place of business of the company is 2995 US Highway 1 S., St.

Augustine, Florida.

4.      Werner is a Florida limited liability company with its principal place of

business located at 200 Mansell Court East, Suite 510, Roswell, Georgia 30076.

5.    This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§1334 and 157.

6.    Venue is proper in this district under 28 U.S.C. § 1409.

7.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (F) and (O).

## PROCEDURAL AND FACTUAL BACKGROUND

8.    In 2011, the Debtor and Werner began discussions regarding Werner's financial investment in the Debtor.  In connection with these discussions, on or around August 24, 2011, the Debtor and Werner entered into the Lighthouse Imports LLC's Management Agreement ("Management Agreement") setting forth the terms and conditions under which Werner would temporarily manage the day-to-day operations of the Dealership. On January 19, 2012, the parties executed a First Amendment to the Management Agreement (the "Amendment"), modifying the term of the Management Agreement.  A copy of the Management Agreement and the Amendment is attached hereto as **Composite Exhibit "A"** and is incorporated herein by reference.

9.    As set forth in the Management Agreement, Werner was to provide up to a $300,000 loan to the Debtor for use as working capital (as necessary), while Werner would temporarily manage the Dealership and collect a management fee based on fifty-eight percent (58%) of the Dealership's monthly Net Income (as defined in the Management Agreement).

10.    The Amendment modified Section 4 of the Management Agreement such that the term of the Management Agreement ended only upon the earlier of: (i) the denial by Toyota Motor Sales, Inc. or Southeast Toyota (together, "Toyota") of Werner's purchase of forty-three percent (43%) interest in the Debtor pursuant to a separate Interest Purchase Agreement ("IPA") and the Debtor's payment in full of that certain Amended Promissory Note dated January 19, 2012 (the "Note"); or (ii) upon the Closing as defined in the IPA.

11.    The Debtor's operations deteriorated since Werner began managing the Dealership. Over the past year, the Dealership's sales have declined and the Debtor defaulted under the terms of its floor-plan financing arrangement with World Omni Financial Corporation.

12.    Without prior knowledge or approval of the Debtor, on Monday, October 22, 2012, Werner's principal, Curtis G. Werner, transferred approximately $350,000 to Werner from the Debtor's operating account, allegedly for payment of outstanding management fees owed under the Management Agreement (the "Payment"). The Debtor did not authorize the Payment.

13.    Werner's management of the Dealership pursuant to the Management Agreement has largely been unsuccessful. In addition, Werner breached its duty by engaging in self-dealing to the detriment of Debtor's other creditors.

14.    On January 15, 2013, Werner filed a proof of claim in the amount of $177,690.00 (Claim No. 41) (the "Claim"). The basis for the Claim is the alleged

management fees owed to Werner under the Management Agreement.  Lighthouse disputes the Claim and believes the Claim is subject to setoff and counterclaim.  A copy of the Claim is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

**COUNT I.**
**BREACH OF FIDUCIARY DUTY**

15.    Lighthouse re-asserts and re-alleges paragraphs 1 through 14 above, as if fully set forth herein.

16.    From August 24, 2011 up through an including the Petition Date, Werner served as the manager of Lighthouse.  As manager, Werner was responsible for diligently and faithfully carrying out the business activities of Lighthouse, including the following:

(a)    Werner shall operate the Dealership and sell parts and accessories and sell, lease and service the Vehicles in accordance with the customary business practices of Lighthouse;

(b)    Werner shall comply with the financial, accounting, business and management practices, controls and procedures as may be established by Lighthouse;

(c)    Werner shall not misappropriate Lighthouse's assets; and

(d)    Werner shall not engage in conduct which is reasonably calculated to be injurious to Lighthouse.

17.    During Werner's employment, a fiduciary relationship existed between Lighthouse and Werner.

18.    Werner breached its fiduciary duty to Lighthouse by failing to properly manage the Dealership and transferring the Payment.

19.    As a direct and proximate result of Werner's breach of fiduciary duties, Lighthouse has been damaged in its business and property, and accordingly, seeks compensatory damages.

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter a judgment against Werner TSA, LLC: (i) awarding Lighthouse Imports LLC compensatory damages; (ii) granting all costs, including attorneys fees, from this action; and (iii) for such other and further relief as the Court deems just and proper.

## COUNT II.
## BREACH OF CONTRACT

20.    Lighthouse re-asserts and re-alleges paragraphs 1 through 19 above, as if fully set forth herein.

21.    Werner and the Debtor entered into the Management Agreement, which was a valid, binding, and enforceable contract.

22.    Werner has materially breached the contract by failing to properly manage the Dealership and transferring the Payment.

23.    As a direct result of Werner's failures, the Debtor has sustained damages.

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter a judgment against Werner TSA, LLC: (i) awarding damages in an amount of $350,000.00; (ii) granting interest from the date of the breach of contract; (iii) granting all costs, including attorneys fees, from this action; and (iv) for such other and further relief as the Court deems just and proper.

## COUNT III.
### AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFER PURSUANT TO 11 U.S.C. §§547 AND 550

24.    Lighthouse re-asserts and re-alleges paragraphs 1 through 19 above, as if fully set forth herein.

25.    During the 90 days preceding the Petition Date, the Debtor transferred to Werner the Payment.

26.    The Payment was a transfer of property of the Debtor.

27.    The Payment was to or for the benefit of Werner as a creditor of the Debtor.

28.    The Payment was made on account of an antecedent debt owed by the Debtor to Werner before the Payment was made.

29.    The Payment was made while the Debtor was insolvent.

30.    The Payment enabled Werner to recover more than it would have received as a creditor if:

    (a)    the case were a case under Chapter 7 of the Bankruptcy Code;

    (b)    the Payment had not been made; and

(c)    Werner received payment of the debt to the extent provided by the provisions of the Bankruptcy Code.

31.    By reason of the foregoing, the Payment made by the Debtor to Werner is avoidable pursuant to 11 U.S.C. §547(b).  As a result, the Debtor may recover the Payment or the value of the Payment from Werner for the benefit of the estate pursuant to 11 U.S.C. §550.

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter a judgment against Werner TSA, LLC: (i) avoiding the Payment pursuant to 11 U.S.C. §547; (ii) recovering the Payment from Werner TSA, LLC pursuant to 11 U.S.C. §550; (iii) granting interest from the date of the Payment; (iv) granting all costs from this action; and (v) for such other and further relief as the Court deems just and proper.

## COUNT IV.
## OBJECTION TO CLAIM NO. 41

32.    Debtor re-incorporates and re-alleges paragraphs 1 through 31 as set forth above.

33.    Lighthouse objects to the Claim pursuant to 11 U.S.C. §502(d), and requests the Claim be disallowed in toto unless and until Werner refunds to the bankruptcy estate the amount of funds received from Lighthouse as a voidable preference pursuant to 11 U.S.C. §§547 and 550, as alleged in this complaint.

34.    Section 502(d) is designed to foster the "restoration" of assets to a debtor's estate, thereby assuring "equality of distribution" of the estate's assets by precluding anyone

who has received a voidable transfer from sharing in any distribution or burdening an estate

with continuing litigation unless he first pays back any voidable transfer that he has received.

Keppel v. Tiffin Sav. Bank, 197 U.S. 356 (1905); Irving Trust Co. v. Frimitt, 1 F. Supp. 16,

18 (S.D.N.Y. 1932); Matter of Mid Atlantic Fund, Inc., 60 B.R. 604, 609-10 (Bankr.

S.D.N.Y. 1986).

35.    Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in

accordance with the Bankruptcy Rules "shall constitute prima facie evidence of the validity

and amount of the claim." The burden of proof is on the objecting party to produce evidence

equivalent in probative value to that of the creditor to rebut the prime facie effect of the proof

of claim.  However, "the ultimate burden of persuasion is always on the claimant." In re

Holm, 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. King, Collier on Bankruptcy § 502.02,

at 502-22 (15th ed. 1991) (footnotes omitted)); see also In re Leatherland Corp. 302 B.R.

250, 259 (Bankr. N.D. Ohio 2003).  A properly supported objection to a claim initiates a

contested matter under the Bankruptcy Rules.  See Fed. R. Bankr. P. 3007 (adv. comm. note).

36.    The entry of a judgment on the complaint is not a prerequisite to the

disallowance under section 502(d) of the creditor's claim.  See In re Chase & Sanborn

Corporation, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991).

**WHEREFORE,** Lighthouse Imports LLC respectfully requests that this Court enter

a judgment against Werner TSA, LLC: (i) disallowing any and all claims by Werner TSA,

LLC; or any amount owed to Werner TSA, LLC according to the Debtor's schedules under

11 U.S.C. §502(d), unless Werner TSA, LLC has returned to the Debtor's estate the amount

for which it is liable pursuant to 11 U.S.C. §550; and (ii) for such other and further relief as

the Court deems just and proper.

      **RESPECTFULLY SUBMITTED** this ⎽5⎽ day of February, 2013.

           R. Scott Shuker, Esquire
           Florida Bar No.: 984469
           Mariane L. Dorris
           Florida Bar No. 0173665
           **LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
           111 N. Magnolia Avenue, Suite 1400
           Orlando, Florida  32801
           Telephone: (407) 481-5800
           Facsimile: (407) 481-5801
           Attorneys for Lighthouse Imports LLC

## LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (this "Agreement") is made and entered on the ___ day of August, 2011 (the "Effective Date"), by and between Warner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

### RECITALS

WHEREAS, Principal is the owner and operator of a Toyota dealership (the "Dealership") and leases the real property with an address of 2995 US Highway 1 South, St. Augustine, FL 32086 (the "Real Property"); and

WHEREAS, Principal desires to retain Agent, and Agent desires to be retained by Principal, to manage Principal's Dealership, which sells parts and accessories and sells, leases and services Toyota vehicles and pre owned vehicles (the "Vehicles") on Principal's behalf.

### AGREEMENT

NOW, THEREFORE, in consideration of the recitals, which the parties agree to and agree are true and accurate, and the mutual covenants hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, it is agreed between the parties hereto as follows:

1.    Appointment of Agent.  Principal hereby appoints Agent as its manager to operate the Dealership and sell parts and accessories and sell, lease and service the Vehicles on behalf of Principal, in accordance with the laws of the State of Florida and operating under Principal's Dealer License(s) and Agreement(s), and Agent does hereby accept such appointment and agrees to operate the Dealership and sell, lease and service the Vehicles pursuant to the terms and conditions set forth herein. Agent shall not be required to expend any funds to repair or replace any portion of the Dealership building and improvements, or any furniture, fixtures or equipment owned by the Dealership unless damaged or destroyed by the grossly negligent act of Agent.

2.    Standards of Agent's Performance.  Agent agrees to diligently and faithfully sell parts and accessories and sell, lease and service the Vehicles in accordance with the customary business practices of Principal, and in accordance with the requirements of the laws of the State of Florida and Toyota Motor Sales ("Toyota") in the best interests of the Principal. Agent further agrees that it shall not enter into any non-cancelable agreements or contracts affecting the Dealership that have a term extending beyond the term hereof, proceed with any capital improvement program, make any additions or alterations to the Real Property of the Dealership, or take any other action that would have a material long-term effect on the Dealership, or Principal's obligations relating thereto without the written consent of Principal. Notwithstanding the above, Agent has agreed to make available to Principal $300,000.00 in cash, in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership for purposes of operating the Dealership during the term hereof. The $300,000.00 additional cash will take the form of a loan to Principal and memorialized with a promissory note. Should less than $300,000.00 be utilized by the Dealership, the promissory note shall be deemed amended to

**COMPOSITE**
**EXHIBIT "A"**

reflect the actual amount, less than $300,000.00, actually utilized by the Dealership and Agent in the operation of the Dealership. Nothing herein shall be construed to require Agent to bring the net working capital of the Dealership up to Toyota standards. Agent and Principal acknowledge that the purpose of this Agreement is to provide short-term management and financial assistance while various approvals are obtained as required by the Interest Purchase Agreement ("IPA") entered into between Agent and Principal contemporaneously with this Agreement.

Notwithstanding the above, Agent shall:

(a)     Comply with, and cause the Principal to comply with, the policies and procedures contained in the Toyota Dealer Accounting Manual (the "Accounting Manual"), and, such other financial, accounting, business and management practices, controls and procedures as may be established by Principal from time to time, including, without limitation, the following:

(i)     The supervision of the preparation and submission to the Principal, on a timely basis, of current and accurate financial reports required by the Accounting Manual and such other reports as may be requested by the Principal from time to time;

(ii)    The installation and maintenance of the Dealer Information System electronic data processing facilities as available from Principal which will facilitate the transmission and reception of such data on the computer network as the Principal may require.

(b)     Comply with, and cause the Principal to comply with, in all material respects, all federal, state and local laws, rules and regulations which affect in any way the operation of the Principal's business, including, without limitation, those relating to (i) partnership income taxes and estimated income taxes, franchise taxes, ad valorem property taxes, registration and transfer fees and taxes, sales and use taxes, taxes relating to employees (including, without limitation, withholding taxes on wages, salaries and other remuneration of employees, and taxes imposed under the Federal Unemployment Tax Act and the Federal Insurance Contribution Act), and (ii) the ordering, sale and service of Toyota products sold pursuant to the Principal's Toyota Dealer Sales Agreement and the sales and service of used vehicles (including, without limitation, those related to motor vehicle safety, emissions control and customer service). Agent shall obtain and follow the counsel of the Principal's approved law firm or firms respecting compliance by the Principal with such federal, state and local laws, rules and regulations as may be applicable to the business of the Principal and provide the Principal with such information and assistance as may be reasonably requested in connect with the performance of obligations under such laws, rules and regulations.

(c)     Cause the Principal to maintain stocks of current models of such lines or series of Toyota vehicles, and parts and accessories thereof, of an assortment and in quantities adequate to meet the current and anticipated demand as consistent with the Principal's financial capacities.

(d)     Cause the Principal to comply with or observe the provisions of the Toyota Dealer Sales Agreement.

(e)     Carry on the business and operations of the Principal to comply in all respects, and remain in compliance, with all applicable federal, state, regional, county and local laws, statutes, rules, regulations or ordinances concerning public health and safety, and environment.

2

Agent's responsibility under this Section 2 shall be limited to the exercise of reasonable care and Agent shall have no obligation or liability for any obligation of the Dealership to others, save and except those specially provided for in this Agreement. Notwithstanding anything contained to the contrary, Agent shall have no responsibility, and shall not be deemed to have assumed any liability or obligation of the Principal or the Dealership.

3.      Limitations on Authority.  Without the prior written consent of the Principal, the Agent shall not have the authority to cause the Principal to do any of the following:

(a)     Create, incur, assume or otherwise become or remain directly or indirectly liable for any indebtedness or other obligation for borrowed money, except for one or more floor plan lines of credit to be used for the sole purpose of financing the acquisition of new and used vehicle inventory, which will require approval of the Principal.

(b)     Sell, assign, pledge, transfer or otherwise dispose of any assets of the Principal or any income or profit therefrom, except for sale of service, parts, body shop and sales and lease of vehicle inventory in the ordinary course of business;

(c)     Directly or indirectly create, incur, assume or permit to exist, any lien, security interest or other charge, restriction or encumbrance on the Principal's assets except for existing liens as of the Effective Date of this Agreement and liens on new and used vehicle inventory securing floor plan lines of credit;

(d)     Directly or indirectly create or become liable with respect to any contingent obligation except for (i) guaranties resulting from endorsement of negotiable instruments for collection in the ordinary course of business, and (ii) obligations, warranties and indemnities not related to the indebtedness of any person, which are undertaken in the ordinary course of business.

(e)     Make any loans, advances or extensions of credit except in the ordinary course of business, or forgive, cancel, modify or waive any material debt or claim held by the Dealership.

(f)     Make any capital expenditure, or series of related capital expenditures, in excess of $10,000.00.

(g)     Make any debt or equity investment in, or acquire any stock or assets of, any other entity.

(h)     Enter into any transaction with any member or officer of the Principal, or any family member or affiliate of any member or officer of the Principal.

(i)     Initiate any lawsuit on behalf of the Principal other than routine collection matters.

(j)     Undertake any act or action in contravention of the provisions of the Principal's operating agreement.

3

4. **Term.** Subject to the provisions of Section 16 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of (i) the approval or denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc.; (ii) three hundred and sixty-five (365) days thereafter; or (iii) upon the Closing as same is defined and provided for in the IPA. Sixty (60) day extensions may be granted, but only if mutually agreed to in writing by the parties.

5. **Separate Operating Account.** Agent has agreed to make available $300,000.00 in additional cash, in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership. Nothing herein requires Agent to bring the net working capital of the Dealership up to Toyota standards. Agent is entitled to maintain a separate account for the $300,000.00 of additional cash, which account may be segregated from other operating accounts of the Dealership. Agent shall be entitled to use available cash and capital of the Dealership to pay trade payables and other expenses of the Dealership, as well as utilizing the $300,000.00 of additional cash referred to herein. Agent will continue to operate the Dealership on Principal's General Ledger.

6. **General Powers.** Subject to the terms of this Agreement, Agent shall have reasonable discretion in the manner and process of operating the Dealership and selling parts and accessories and selling, leasing and servicing the Vehicles, including, without limitation, credit policies and all phases of advertising, promotion and publicity relating to the sale, leasing and servicing of the Vehicles.

7. **Management Fee of Agent.** In consideration of the management services to be rendered by Agent hereunder, the Principal shall pay to Agent a monthly management fee (the "Management Fee") as follows:

    (a)    A Management Fee of fifty-eight percent (58%) of the monthly Net Income of the Principal (as defined below) for the period commencing on the Effective Date and ending on the date of termination of this Agreement.

    (b)    Monthly, the Net Income of the Principal shall be determined as set forth on the Principal's Manufacturer's financial statements for the applicable period which shall be prepared in accordance with the manufacturer's required accounting practices provided, that the following items shall not be used in calculating profits or losses: (i) no income taxes shall be deducted; and (ii) any item of income and expense that should have been properly accrued under generally accepted accounting principles prior to the effective date of this Agreement. For purposes of Net Income, rent charged to Principal for its real estate lease shall not exceed $50,000.00 per month, plus taxes, insurance and maintenance (in a triple net manner provided by the Lease). Losses from prior periods during the term shall be carried forward and applied against Net Income in future periods. The Management Fee shall be considered a "Dealer Bonus" in the Principal's Manufacturer's financial statements. Further, in determining the Management Fee payable hereunder, the expense of the Management Fee shall not be included in order to compute the Net Income of the Principal. In determining profits and losses for the purpose of this Section 7(b), only income and expenses of Principal during or applicable to the term shall be considered; it being the intention of the parties that Agent shall not be responsible for any activity of the Principal prior to the effective date of this Agreement. Except as modified hereby, the existing

4

expense structure of the Dealership shall remain in place, or agreed to by Principal, including the payment of a management fee to LHT Real Estate, LLC in the amount of $50,000.00 per month.

(c)   Fifty percent (50%) of the Management Fee shall be payable within fifteen (15) days of the end of each month based upon year to date Net Income of the Principal during the term hereof, less any amounts previously paid to Agent with respect to the Management Fee for such year and the balance within thirty (30) days.  The final annual Net Income of the Principal shall be determined by the Principal's certified public accounting firm on or before March 15 of each year for the prior fiscal year in accordance with generally accepted accounting principles, consistently applied.  Any remaining Management Fee due to Agent not already paid during the previous year, shall be paid at such time.  In the event the Agent has received Management Fee payments in excess of this amount determined due, such amounts shall be offset against the Management Fee next due to Agent.

8.   Covenants of Agent.  Agent hereby covenants with the Principal as follows:

(a)   Best Efforts.  Agent will at all times use its best business judgment in rendering the management services described herein.

(b)   Notices of Adverse Events.  Agent will give the Principal prompt written notice in the event of either the filing or commencement of any action, suit, or proceeding against the Principal or the Dealership, or any development which is likely to result in a material adverse change in the condition or prospects (whether financial or otherwise) of the Principal or the Dealership.

9.   Indemnification.

(a)   Agent agrees to indemnify, defend and save Principal, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Agent's gross negligence or intentional act (as defined by Florida law) in the management of the Dealership.

(b)   Principal agrees to indemnify, defend and save Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Principal's ownership and/or operation of the Dealership or Agent's management of the Dealership, unless caused by the gross negligence or intentional act (as defined by Florida law) of Agent.  Any and all liability associated with Principal's performance prior to the Effective Date of this Agreement shall be the sole responsibility of Principal.  Principal agrees to release, defend, indemnify and hold Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from any and all costs, attorneys' fees, damages, losses and other liability for acts of Principal allegedly occurring before the term of this Agreement.  Agent recognizes that Principal may have insurance coverage that would satisfy all or part of any claim by Agent against Principal for indemnification, and that Principal may, at its option, make demand upon its insurance carrier to respond to Agent's demand for indemnification.

5

10.    Termination Events.  This Agreement may be terminated prior to the expiration of its term under Section 4 effective upon the occurrence of any of the following:

(a)    by mutual written agreement of the Principal and Agent; or

(b)    by the Principal for good cause on twenty (20) days prior written notice to Agent if Agent shall fail to cure such failure within twenty (20) calendar days after receipt of written notice from the Principal specifying in detail the good cause event upon which the notice of termination is based.  For purposes of this Agreement, the term "good cause" shall mean any one or more of the following events: (i) Agent's material breach of this Agreement; (ii) the commission of fraud against the Principal or misappropriation of any of the Principal's assets; (iii) engaging in conduct which is reasonably calculated to be injurious to the Principal or its Members; or (iv) the conviction of a crime involving dishonesty or theft; or

(c)    by Agent on thirty (30) days prior written notice to the Principal or by written notice to the Principal if the Principal fails to comply with any of its obligations under this Agreement, and the Principal shall fail to cure such default within twenty (20) days; or

(d)    by Principal upon the death or permanent disability of Agent.

11.    Effect of Termination.  Each party's right of termination under this Section is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies.

12.    Principal's Employees.  Agent has the discretion to retain or terminate employees of the Dealership, other than the comptroller, if it chooses.  Notwithstanding the above, should Agent hire or terminate a general manager, general sales manager or service manager it shall confer with Howard Hubler.

13.    Governing Law; Venue.  This Agreement shall be construed, enforced and governed in all respects by the laws of the State of Florida.  The parties agree that the Courts of competent jurisdiction in St. Johns County, Florida, shall have exclusive jurisdiction for all matters and issues relative to this Agreement.

14.    Notices. All notices, demands or other communications required or permitted to be given hereunder will be in writing, and any and all such items will be deemed to have been duly delivered upon personal delivery, or as of the third business day after mailing by United States mail, certified, return receipt requested, postage prepaid, addressed as follows, or as of the immediately following business day after deposit with Federal Express or a similar overnight courier service, addressed as follows, or as of the business day if by email to the email address set forth below:

If to Principal:

Lighthouse Imports, LLC.
2910 Saddle Club Road
Greenwood, IN 46143-9214
Attn: Howard F. Hubler
Email:HHubler@lighthousetoyota.com

with a copy to:

J. Gregory Humphries, Esquire
300 South Orange Avenue
Suite 1000
Orlando, Florida 32801
Email JHumphries@shutts.com

If to Purchaser:

Werner TSA, LLC
Attn: Curtis G. Werner
200 Mansell Court East
Suite 510
Roswell, Georgia 30076
Email cwerner@wernerholdings.com

with a copy to:

Mark L. Ornstein, Esquire
Kilgore Pearlman Stamp Ornstein & Squires, P.A.
2 South Orange Avenue / 5th Floor
Orlando, Florida 32801
Email mlornstein@kpsos.com

15.   **Waiver of Breach.** No consent or waiver, express or implied, by any party hereto or of any breach or default by any other party hereto in the performance by the other of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder. Failure on the part of any party to complain of any act or failure to act of the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.   **Attorney's Fees.** In the event of any controversy, claim, or dispute between parties hereto arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to receive reasonable expenses from the losing party, including attorneys' fees and costs.

7

17.  Miscellaneous.

(a)  Amendment.  This Agreement may not be modified or amended, at any time, except by an instrument in writing signed by all parties.

(b)  Entire Agreement.  This Agreement constitutes the entire agreement for management of the Dealership and between the parties pertaining to the subject matter contained herein, and supersedes all prior guaranties, warranties, agreements, representations, and understandings of the parties.  Any change to or modification of this agreement must be in writing, signed by both parties hereto.

(c)  Headings.  The Subject headings of the paragraphs and subparagraphs of this Agreement are include for purposes of convenience only, and shall not affect the construction or interpretation of any of its provisions.

(d)  Severability.  If any term, condition, or covenant of this Agreement shall be invalid or unenforceable to any extent or any application, and the remainder of this Agreement and such term or provision except to such extent or in such application, shall not be affected thereby, then each and every term and provision of this Agreement shall be valid and enforced to the fullest extent and the broadest application permitted by law.

(e)  Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be original and all of which, when taken together, shall constitute one agreement.  This Agreement may be executed by facsimile signature, and a facsimile signature shall constitute an original signature.

(f)  Relationship.  Agent and Principal shall not be construed as joint venturers or partners of each other and neither shall have the power to bind or obligate the other, except as specifically set forth in this Agreement.

(g)  Assignment.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.  Neither party shall be permitted to assign its rights and obligations under this Agreement without the prior written consent of the other party.

(h)  Waiver of Jury Trial.  EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND WILLINGLY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY DOCUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES' ACCEPTANCE OF THIS AGREEMENT.

In Witness whereof as of the date stated above, the parties execute this Agreement and agree to be bound thereby.

PRINCIPAL:                                    AGENT:

Lighthouse Imports, LLC                        Werner USA, LLC
a Florida limited liability company            a Florida limited liability company

By: _____                    By: X_____
Howard P. Butler                               Curtis G. Werner
Managing Member                                Manager

9

## FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S
## MANAGEMENT AGREEMENT

THIS FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT (this "Amendment") is made and entered on this 19th day of January (the "Effective Date"), by and between Werner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

### RECITALS

WHEREAS, Principal and Agent entered into that certain Lighthouse Imports, LLC's Management Agreement dated August 24, 2011 for Manager to manage Principal's Dealership located in St. Augustine (the "Management Agreement"); and

WHEREAS, Principal and Agent desire to amend the Term of the Management Agreement as more fully set forth herein.

### AGREEMENT

NOW, THEREFORE, for and in consideration of the foregoing promises (which are hereby incorporated into this Amendment) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1. **Recitals.** Principal and Agent agree that the above recitals are true and correct and are incorporated herein by this reference.

2. **Modification to Section 4 "Term."** Section 4 shall be deleted in its entirety and replaced with the following:

> 4. **Term.** Subject to the provisions of Section 10 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of: (i) denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc. and Principal's payment in full of that certain Amended Promissory Note of even date herewith, as may be amended from time to time by the parties hereto; or (ii) upon the Closing as same is defined and provided for in the IPA.

3. **Miscellaneous.** Except as modified by this Amendment, the Management Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

1

The parties have executed this First Amendment to Lighthouse Imports, LLC's Management Agreement the day and year first above written.

**PRINCIPAL:**                          **AGENT:**

Lighthouse Imports, LLC                 Werner TSA, LLC
a Florida limited liability company     a Florida limited liability company

By: _____          By: _____
    Howard C. Hubler                        Curtis G. Werner
    Managing Member                         Manager

2

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                    **CASE NO. 6:12-bk-14459-KSJ**
                                          **Chapter 11**

**LIGHTHOUSE IMPORTS, LLC**

              Debtor.
_____/

### PROOF OF CLAIM (UNSECURED)

1.      The undersigned, of the firm of Burr & Forman, LLP, 200 South Orange Avenue, Suite 800, Orlando, Florida 32801, is the attorney for WERNER TSA, LLC, and is authorized to make this proof of claim.

2.      The Debtor was, at the time of filing of the petition, and still is indebted (or liable) to this claimant, in the total sum of $177,690.96 as of the date of filing of the Debtor's bankruptcy petition (October 24, 2012), consisting of the principal sum of $527,690.96 less $350,000.00 paid on October 22, 2012.

3.      The consideration for this debt (or grounds of liability) is as follows:  *see:* Lighthouse Imports, LLC's Management Agreement dated August 24, 2011 by and between Werner TSA, LLC and Lighthouse Imports, LLC, and First Amendment to Lighthouse Imports, LLC's Management Agreement, a true and correct copy of which is attached hereto as Composite Exhibit "A"; Calculation of management fees owed to Werner TSA, LLC, a true and correct copy of which was attached as Exhibit "I" to Werner TSA, LLC's Opposition to Debtor's Emergency Motion to Reject Management Agreement and Certificate of Necessity for Request for Emergency Hearing (Doc. No. 28) and which is attached hereto as Composite Exhibit "B" showing a total amount due to Werner TSA, LLC in the amount of $527,690.96.

4.      The writings on which this claim is founded (or a duplicate thereof), is attached as Exhibits "A" and "B" to this Proof of Claim.

Unless it is attached hereto or its absence is explained herein, no note or other negotiable instrument has been received for the account or any part of it.

5.      The amounts of all payments on this claim have been credited and deducted for the purpose of making this proof of claim.

1604110 v1                          **EXHIBIT "B"**

6.    This claim is not subject to any setoff or counterclaim.


7.    This is an unsecured claim, in the principal amount of $177,690.96, plus interest, costs and attorneys' fees.

Total Amount Claimed $177,690.96 (plus costs and fees)

Claim No. _____
(Office use only)

WERNER TSA, LLC

By: /s/ Jon E. Kane_____
    JON E. KANE, ESQUIRE, Its Attorney
    Florida Bar No. 814202
    Burr & Forman, LLP
    200 South Orange Avenue, Suite 800
    Orlando, Florida  32801
    Telephone:  (407) 540-6625
    Facsimile:  (407) 540-6601

    Dated:        January 15, 2013

2
**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 24 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 3 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 9 of 19

## LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT

THIS MANAGEMENT AGREEMENT (this "Agreement") is made and entered on the 24 day of August, 2011 (the "Effective Date"), by and between Werner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

### RECITALS

WHEREAS, Principal is the owner and operator of a Toyota dealership (the "Dealership") and leases the real property with an address of 2995 US Highway 1 South, St. Augustine, FL 32086 (the "Real Property"); and

WHEREAS, Principal desires to retain Agent, and Agent desires to be retained by Principal, to manage Principal's Dealership, which sells parts and accessories and sells, leases and services Toyota vehicles and pre-owned vehicles (the "Vehicles") on Principal's behalf.

### AGREEMENT

NOW, THEREFORE, in consideration of the recitals, which the parties agree to and agree are true and accurate, and the mutual covenants hereafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, it is agreed between the parties hereto as follows:

1.    Appointment of Agent.  Principal hereby appoints Agent as its manager to operate the Dealership and sell parts and accessories and sell, lease and service the Vehicles on behalf of Principal, in accordance with the laws of the State of Florida and operating under Principal's Dealer License(s) and Agreement(s), and Agent does hereby accept such appointment and agrees to operate the Dealership and sell, lease and service the Vehicles pursuant to the terms and conditions set forth herein.  Agent shall not be required to expend any funds to repair or replace any portion of the Dealership building and improvements, or any furniture, fixtures or equipment owned by the Dealership unless damaged or destroyed by the grossly negligent act of Agent.

2.    Standards of Agent's Performance.  Agent agrees to diligently and faithfully sell parts and accessories and sell, lease and service the Vehicles in accordance with the customary business practices of Principal, and in accordance with the requirements of the laws of the State of Florida and Toyota Motor Sales ("Toyota") in the best interests of the Principal.  Agent further agrees that it shall not enter into any non-cancelable agreements or contracts affecting the Dealership that have a term extending beyond the term hereof, proceed with any capital improvement program, make any additions or alterations to the Real Property of the Dealership, or take any other action that would have a material long-term effect on the Dealership or Principal's obligations relating thereto without the written consent of Principal.  Notwithstanding the above, Agent has agreed to make available to Principal $300,000.00 in cash, in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership for purposes of operating the Dealership during the term hereof.  The $300,000.00 additional cash will take the form of a loan to Principal and memorialized with a promissory note.  Should less than $300,000.00 be utilized by the Dealership, the promissory note shall be deemed amended to

**COMPOSITE
EXHIBIT "A"**


**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 25 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 4 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 10 of 19

reflect the actual amount, less than $300,000.00, actually utilized by the Dealership and Agent in the operation of the Dealership. Nothing herein shall be construed to require Agent to bring the net working capital of the Dealership up to Toyota standards. Agent and Principal acknowledge that the purpose of this Agreement is to provide short-term management and financial assistance while various approvals are obtained as required by the Interest Purchase Agreement ("IPA") entered into between Agent and Principal contemporaneously with this Agreement.

Notwithstanding the above, Agent shall:

(a)    Comply with, and cause the Principal to comply with, the policies and procedures contained in the Toyota Dealer Accounting Manual (the "Accounting Manual"); and, such other financial, accounting, business and management practices, controls and procedures as may be established by Principal from time to time, including, without limitation, the following:

(i)    The supervision of the preparation and submission to the Principal, on a timely basis, of current and accurate financial reports required by the Accounting Manual and such other reports as may be requested by the Principal from time to time;

(ii)    The installation and maintenance of the Dealer Information System electronic data processing facilities as available from Principal which will facilitate the transmission and reception of such data on the computer network as the Principal may require.

(b)    Comply with, and cause the Principal to comply with, in all material respects, all federal, state and local laws, rules and regulations which affect in any way the operation of the Principal's business, including, without limitation, those relating to (i) partnership income taxes and estimated income taxes, franchise taxes, ad valorem property taxes, registration and transfer fees and taxes, sales and use taxes, taxes relating to employees (including, without limitation, withholding taxes on wages, salaries and other remuneration of employees, and taxes imposed under the Federal Unemployment Tax Act and the Federal Insurance Contribution Act), and (ii) the ordering, sale and service of Toyota products sold pursuant to the Principal's Toyota Dealer Sales Agreement and the sales and service of used vehicles (including, without limitation, those related to motor vehicle safety, emissions control and customer service). Agent shall obtain and follow the counsel of the Principal's approved law firm or firms respecting compliance by the Principal with such federal, state and local laws, rules and regulations as may be applicable to the business of the Principal and provide the Principal with such information and assistance as may be reasonably requested in connect with the performance of obligations under such laws, rules and regulations.

(c)    Cause the Principal to maintain stocks of current models of such lines or series of Toyota vehicles, and parts and accessories thereof, of an assortment and in quantities adequate to meet the current and anticipated demand as consistent with the Principal's financial capacities.

(d)    Cause the Principal to comply with or observe the provisions of the Toyota Dealer Sales Agreement.

(e)    Carry on the business and operations of the Principal to comply in all respects, and remain in compliance, with all applicable federal, state, regional, county and local laws, statutes, rules, regulations or ordinances concerning public health and safety, and environment.

2

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 26 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 5 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 11 of 19

Agent's responsibility under this Section 2 shall be limited to the exercise of reasonable care and Agent shall have no obligation or liability for any obligation of the Dealership to others, save and except those specially provided for in this Agreement. Notwithstanding anything contained to the contrary, Agent shall have no responsibility, and shall not be deemed to have assumed any liability or obligation of the Principal or the Dealership.

3.    **Limitations on Authority.** Without the prior written consent of the Principal, the Agent shall not have the authority to cause the Principal to do any of the following:

(a)    Create, incur, assume or otherwise become or remain directly or indirectly liable for any indebtedness or other obligation for borrowed money, except for one or more floor plan lines of credit to be used for the sole purpose of financing the acquisition of new and used vehicle inventory, which will require approval of the Principal.

(b)    Sell, assign, pledge, transfer or otherwise dispose of any assets of the Principal, or any income or profit therefrom, except for sale of service, parts, body shop and sale and lease of vehicle inventory in the ordinary course of business;

(c)    Directly or indirectly create, incur, assume or permit to exist, any lien, security interest or other charge, restriction or encumbrance on the Principal's assets except for existing liens as of the Effective Date of this Agreement and liens on new and used vehicle inventory securing floor plans lines of credit;

(d)    Directly or indirectly create or become liable with respect to any contingent obligation except for (i) guaranties resulting from endorsement of negotiable instruments for collection in the ordinary course of business, and (ii) obligations, warranties and indemnities, not related to the indebtedness of any person, which are undertaken in the ordinary course of business.

(e)    Make any loans, advances or extensions of credit except in the ordinary course of business, or forgive, cancel, modify or waive any material debt or claim held by the Dealership;

(f)    Make any capital expenditure, or series of related capital expenditures, in excess of $10,000.00.

(g)    Make any debt or equity investment in, or acquire any stock or assets of, any other entity.

(h)    Enter into any transaction with any member or officer of the Principal, or any family member or affiliate of any member or officer of the Principal.

(i)    Initiate any lawsuit on behalf of the Principal other than routine collection matters.

(j)    Undertake any act or action in contravention of the provisions of the Principal's operating agreement.

3

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ   Doc 1   Filed 02/05/13   Page 27 of 39
Case 6:12-bk-14459-KSJ   Claim 41   Filed 01/15/13   Page 6 of 18
Case 6:12-bk-14459-KSJ   Doc 7   Filed 10/24/12   Page 12 of 19

4.   **Term.** Subject to the provisions of Section 10 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of (i) the approval or denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc., (ii) three hundred and sixty-five (365) days thereafter; or (iii) upon the Closing as same is defined and provided for in the IPA. Sixty (60) day extensions may be granted, but only if mutually agreed to in writing by the parties.

5.   **Separate Operating Account.** Agent has agreed to make available $300,000.00 in additional cash in a segregated bank account, to be used in conjunction with available cash and capital of the Dealership. Nothing herein requires Agent to bring the net working capital of the Dealership up to Toyota standards. Agent is entitled to maintain a separate account for the $300,000.00 of additional cash, which account may be segregated from other operating accounts of the Dealership. Agent shall be entitled to use available cash and capital of the Dealership to pay trade payables and other expenses of the Dealership, as well as utilizing the $300,000.00 of additional cash referred to herein. Agent will continue to operate the Dealership on Principal's General Ledger.

6.   **General Powers.** Subject to the terms of this Agreement, Agent shall have reasonable discretion in the manner and process of operating the Dealership and selling parts and accessories and selling, leasing and servicing the Vehicles, including without limitation, credit policies and all phases of advertising, promotion and publicity relating to the sale, leasing and servicing of the Vehicles.

7.   **Management Fee of Agent.** In consideration of the management services to be rendered by Agent hereunder, the Principal shall pay to Agent a monthly management fee (the "Management Fee") as follows:

(a)   A Management Fee of fifty-eight percent (58%) of the monthly Net Income of the Principal (as defined below) for the period commencing on the Effective Date and ending on the date of termination of this Agreement.

(b)   Monthly, the Net Income of the Principal shall be determined as set forth on the Principal's Manufacturer's financial statements for the applicable period which shall be prepared in accordance with the manufacturers' required accounting practices provided, that the following items shall not be used in calculating profits or losses: (i) no income taxes shall be deducted; and (ii) any item of income and expense that should have been properly accrued under generally accepted accounting principles prior to the effective date of this Agreement. For purposes of Net Income, rent charged to Principal for its real estate lease shall not exceed $50,000.00 per month, plus taxes, insurance and maintenance (in a triple net manner provided by the Lease). Losses from prior periods during the term shall be carried forward and applied against Net Income in future periods. The Management Fee shall be considered a "Dealer Bonus" in the Principal's Manufacturer's financial statements. Further, in determining the Management Fee payable hereunder, the expense of the Management Fee shall not be included in order to compute the Net Income of the Principal. In determining profits and losses for the purpose of this Section 7(b), only income and expenses of Principal during or applicable to the term shall be considered, it being the intention of the parties that Agent shall not be responsible for any activity of the Principal prior to the effective date of this Agreement. Except as modified hereby, the existing

4

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 28 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 7 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 13 of 19

expense structure of the Dealership shall remain in place, or agreed to by Principal, including the payment of a management fee to LHT Real Estate, LLC in the amount of $50,000.00 per month.

(c)    Fifty percent (50%) of the Management Fee shall be payable within fifteen (15) days of the end of each month based upon year to date Net Income of the Principal during the term hereof, less any amounts previously paid to Agent with respect to the Management Fee for such year and the balance within thirty (30) days. The final annual Net Income of the Principal shall be determined by the Principal's certified public accounting firm on or before March 15 of each year for the prior fiscal year in accordance with generally accepted accounting principles, consistently applied. Any remaining Management Fee due to Agent not already paid during the previous year, shall be paid at such time. In the event the Agent has received Management Fee payments in excess of the amount determined due, such amounts shall be offset against the Management Fee next due to Agent.

8.    Covenants of Agent.  Agent hereby covenants with the Principal as follows:

(a)    Best Efforts.  Agent will at all times use its best business judgment in rendering the management services described herein.

(b)    Notices of Adverse Events.  Agent will give the Principal prompt written notice in the event of either the filing or commencement of any action, suit, or proceeding against the Principal or the Dealership, or any development which is likely to result in a material adverse change in the condition or prospects (whether financial or otherwise) of the Principal or the Dealership.

9.    Indemnification.

(a)    Agent agrees to indemnify, defend and save Principal, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Agent's gross negligence or intentional act (as defined by Florida law) in the management of the Dealership.

(b)    Principal agrees to indemnify, defend and save Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from and against all losses, liabilities, claims, damages and costs (including, without limitation, reasonable attorneys' fees and costs) that may arise from Principal's ownership and/or operation of the Dealership or Agents management of the Dealership, unless caused by the gross negligence or intentional act (as defined by Florida law) of Agent. Any and all liability associated with Principal's performance prior to the Effective Date of this Agreement shall be the sole responsibility of Principal. Principal agrees to release, defend, indemnify and hold Agent, its affiliates and their respective officers, directors, employees, agents, successors and assigns harmless from any and all costs, attorneys' fees, damages, losses and other liability for acts of Principal allegedly occurring before the term of this Agreement. Agent recognizes that Principal may have insurance coverage that would satisfy all or part of any claim by Agent against Principal for indemnification, and that Principal may, at its option, make demand upon its insurance carrier to respond to Agent's demand for indemnification.

5

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 29 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 8 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 14 of 19

10.    Termination Events.   This Agreement may be terminated prior to the expiration of its term under Section 4 effective upon the occurrence of any of the following:

(a)    by mutual written agreement of the Principal and Agent; or

(b)    by the Principal for good cause on twenty (20) days prior written notice to Agent, if Agent shall fail to cure such failure within twenty (20) calendar days after receipt of written notice from the Principal specifying in detail the good cause event upon which the notice of termination is based.  For purposes of this Agreement, the term "good cause" shall mean any one or more of the following events: (i) Agent's material breach of this Agreement; (ii) the commission of fraud against the Principal or misappropriation of any of the Principal's assets; (iii) engaging in conduct which is reasonably calculated to be injurious to the Principal or its Members; or (iv) the conviction of a crime involving dishonesty or theft; or

(c)    by Agent on thirty (30) days prior written notice to the Principal or by written notice to the Principal if the Principal fails to comply with any of its obligations under this Agreement, and the Principal shall fail to cure such default within twenty (20) days; or

(d)    by Principal upon the death or permanent disability of Agent.

11.    Effect of Termination.  Each party's right of termination under this Section is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies.

12.    Principal's Employees.  Agent has the discretion to retain or terminate employees of the Dealership, other than the comptroller, if it chooses.  Notwithstanding the above, should Agent hire or terminate a general manager, general sales manager or service manager it shall confer with Howard Hubler.

13.    Governing Law; Venue.   This Agreement shall be construed, enforced and governed in all respects by the laws of the State of Florida.  The parties agree that the Courts of competent jurisdiction in St. Johns County, Florida, shall have exclusive jurisdiction for all matters and issues relative to this Agreement.

14.    Notices.  All notices, demands or other communications required or permitted to be given hereunder will be in writing; and any and all such items will be deemed to have been duly delivered upon personal delivery, or as of the third business day after mailing by United States mail, certified, return receipt requested, postage prepaid, addressed as follows; or as of the immediately following business day after deposit with Federal Express or a similar overnight courier service, addressed as follows; or as of the business day if by email to the email address set forth below:

6

EXHIBIT "B"

Case 6:13-ap-00021-KSJ   Doc 1   Filed 02/05/13   Page 30 of 39
Case 6:12-bk-14459-KSJ   Claim 41   Filed 01/15/13   Page 9 of 18
Case 6:12-bk-14459-KSJ   Doc 7   Filed 10/24/12   Page 15 of 19

If to Principal:

    Lighthouse Imports, LLC.
    2910 Saddle Club Road
    Greenwood, IN 46143-9214
    Attn: Howard F. Hubler
    Email:HHubler@lighthousetoyota.com

    with a copy to:

    J. Gregory Humphries, Esquire
    300 South Orange Avenue
    Suite 1000
    Orlando Florida 32801
    Email JHumphries@shutts.com

If to Purchaser:

    Werner TSA, LLC
    Attn: Curtis G. Werner
    200 Mansell Court East
    Suite 510
    Roswell, Georgia 30076
    Email cwerner@wernerholdings.com

    with a copy to:

    Mark L. Ornstein, Esquire
    Killgore Pearlman Stamp Ornstein & Squires, P.A.
    2 South Orange Avenue / 5th Floor
    Orlando, Florida 32801
    Email mlornstein@kpsos.com

15.   Waiver of Breach.  No consent or waiver, express or implied, by any party hereto or of any breach or default by any other party hereto in the performance by the other of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder.  Failure on the part of any party to complain of any act or failure to act of the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.   Attorney's Fees.  In the event of any controversy, claim, or dispute between parties hereto arising out of or relating to this Agreement or the breach thereof, the prevailing party shall be entitled to receive reasonable expenses from the losing party, including attorneys' fees and costs.

7

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ   Doc 1   Filed 02/05/13   Page 31 of 39
Case 6:12-bk-14459-KSJ   Claim 41   Filed 01/15/13   Page 10 of 18
Case 6:12-bk-14459-KSJ   Doc 7   Filed 10/24/12   Page 16 of 19

17.   Miscellaneous.

(a)   Amendment.  This Agreement may not be modified or amended, at any time, except by an instrument in writing signed by all parties.

(b)   Entire Agreement.   This Agreement constitutes the entire agreement for management of the Dealership and between the parties pertaining to the subject matter contained herein and supersedes all prior guaranties, warranties, agreements, representations, and understandings of the parties. Any change to or modification of this agreement must be in writing, signed by both parties hereto.

(c)   Headings.  The Subject headings of the paragraphs and subparagraphs of this Agreement are include for purpose of convenience only, and shall not affect the construction or interpretation of any of its provisions.

(d)   Severability.  If any term, condition, or covenant of this Agreement shall be invalid or unenforceable to any extent or any application, and the remainder of this Agreement, and such term or provision except to such extent or in such application, shall not be affected thereby, then each and every term and provision of this Agreement shall be valid and enforced to the fullest extend and the broadest application permitted by law.

(e)   Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be original and all of which, when taken together, shall constitute one agreement. This Agreement may be executed by facsimile signature, and a facsimile signature shall constitute an original signature.

(f)   Relationship.  Agent and Principal shall not be construed as joint venturers or partners of each other and neither shall have the power to bind or obligate the other, except as specifically set forth in this Agreement.

(g)   Assignment. The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns.  Neither party shall be permitted to assign its rights and obligations under this Agreement without the prior written consent of the other party.

(h)   Waiver of Jury Trial.  EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND WILLINGLY IRREVOCABLY WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY DOCUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES' ACCEPTANCE OF THIS AGREEMENT.

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 32 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 11 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 17 of 19

In Witness whereof as of the date stated above, the parties execute this Agreement and agree to be bound thereby.

PRINCIPAL:                              AGENT:

Lighthouse Imports, LLC                 Werner TSA, LLC
a Florida limited liability company     a Florida limited liability company

By:                                     By:
Howard F. Hobler                        Curtis G. Werner
Managing Member                         Manager

9

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ    Doc 1    Filed 02/05/13    Page 33 of 39
Case 6:12-bk-14459-KSJ    Claim 41    Filed 01/15/13    Page 12 of 18
Case 6:12-bk-14459-KSJ    Doc 7    Filed 10/24/12    Page 18 of 19

## FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT

**THIS FIRST AMENDMENT TO LIGHTHOUSE IMPORTS, LLC'S MANAGEMENT AGREEMENT** (this "Amendment") is made and entered on this 19th day of January (the "Effective Date"), by and between Werner TSA, LLC, a Florida limited liability company and/or its assigns ("Agent"), and Lighthouse Imports, LLC, a Florida limited liability company ("Principal").

### RECITALS

**WHEREAS**, Principal and Agent entered into that certain Lighthouse Imports, LLC's Management Agreement dated August 24, 2011 for Manager to manage Principal's Dealership located in St. Augustine (the "Management Agreement"); and

**WHEREAS**, Principal and Agent desire to amend the Term of the Management Agreement as more fully set forth herein.

### AGREEMENT

**NOW, THEREFORE**, for and in consideration of the foregoing promises (which are hereby incorporated into this Amendment) and the representations, warranties and agreements contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.    **Recitals.** Principal and Agent agree that the above recitals are true and correct and are incorporated herein by this reference.

2.    **Modification to Section 4 "Term."** Section 4 shall be deleted in its entirety and replaced with the following:

> 4.    *Term.* Subject to the provisions of Section 10 hereof, the term of this Agreement shall be for the period commencing on the Effective Date and end on the earlier of: (i) denial of Agent's purchase pursuant to the IPA by Toyota Motors Sales, Inc. or Southeast Toyota, Inc. and Principal's payment in full of that certain Amended Promissory Note of even date herewith, as may be amended from time to time by the parties hereto; or (ii) upon the Closing as same is defined and provided for in the IPA.

3.    **Miscellaneous.** Except as modified by this Amendment, the Management Agreement remains in full force and effect. This Amendment may be executed in multiple counterparts, each of which shall be an original and all of which, when taken together, shall be one and the same instrument. To facilitate execution of this Amendment, the parties may execute and exchange counterparts of the signature pages by facsimile transmission or by electronic mail in "portable document format" form.

1

**EXHIBIT "B"**

Case 6:13-ap-00021-KSJ   Doc 1   Filed 02/05/13   Page 34 of 39
Case 6:12-bk-14459-KSJ   Claim 41   Filed 01/15/13   Page 13 of 18
Case 6:12-bk-14459-KSJ   Doc 7   Filed 10/24/12   Page 19 of 19

The parties have executed this First Amendment to Lighthouse Imports, LLC's Management Agreement the day and year first above written.

**PRINCIPAL:**                          **AGENT:**

Lighthouse Imports, LLC                 Werner TSA, LLC
a Florida limited liability company     a Florida limited liability company

By: _____                 By: _____
Howard C. Hubler                            Curtis G. Werner
Managing Member                             Manager

2

**EXHIBIT "B"**

**From:** "Silver, Ira" <isilver@mbafcpa.com>
**Subject:** RE: Werner management fees request
**Date:** October 22, 2012 12:15:36 PM EDT
**To:** "'tweeks@staugustinetoyota.com'" <tweeks@staugustinetoyota.com>
**Cc:** 'Howard Hubler' <hhubler@statoyota.com>, "'hhubler@lhtoyota.com'"
<hhubler@lhtoyota.com>, 'Curt Werner ' <cwerner@wernerholdings.com>, "'Lisa
Calabro'" <lcalabro@wernerholdings.com>, "'dmccross@mccrossonlaw.com'"
<dmccross@mccrossonlaw.com>, 'Mark Ornstein' <mlornstein@kpsos.com>,
"'jhumphries@shutts.com'" <jhumphries@shutts.com>, "'tpeeler@staugustinetoyota.com'"
<tpeeler@staugustinetoyota.com>

Tammy, as per your request, I have attached the worksheet I sent to everyone previously. This only
represents management fees owed to Werner, and not those calculated and owed to HH as per the
management fee contracts, however, HH was entitled and did receive $ 10K per month that may be a off
set the amounts owed... If any of the parties need additional information, or have any comments regarding
my interpretation , please call or email me. ...My worksheet utilized the August 24th, 2011 agreement
amongst the parties...Please forward to John G. for his records... ..Hope this helps...Thank you...Ira



COMPOSITE
EXHIBIT "B"
1
**EXHIBIT "B"**

Lighthouse Toyota
Management Fee Computation
September, 1, 2011 - December 31, 2011
January 1, 2012 - August 31, 2012

Computation Under August, 24th , 2011 Management Agreement:


September, 1, 2011 - December 31, 2011

| | | | Due Werner |
|---|---|---|---|
| September | 52,649.00 | 58.00% | 30,536.42 |
| October | 56,159.00 | 58.00% | 32,572.22 |
| November | 30,973.00 | 58.00% | 17,964.34 |
| December | 88,634.00 | 58.00% | 51,407.72 |
| | 228,415.00 | | 132,480.70 |
| Miscellaneous Adjustments: | | | |
| Interest Income - shareholders | | | |
| ($250,000 @ 2.5% x 4 Months) | 2,083.00 | 58.00% | 1,208.14 |
| | 230,498.00 | | 133,688.84 |


January 1, 2012 - August 31, 2012

| | | | |
|---|---|---|---|
| January | 79,609.00 | 58.00% | 46,173.22 |
| February | 83,129.00 | 58.00% | 48,214.82 |
| March | 97,347.00 | 58.00% | 56,461.26 |
| April | 116,815.00 | 58.00% | 67,752.70 |
| May | 74,739.00 | 58.00% | 43,348.62 |
| June | 87,101.00 | 58.00% | 50,518.58 |
| July | 88,289.00 | 58.00% | 51,207.62 |
| August | 46,110.00 | 58.00% | 26,743.80 |
| | 673,139.00 | | 390,420.62 |
| Miscellaneous Adjustments: | | | |
| New car losses | | | |
| Interest Income - shareholders | 6,175.00 | 58.00% | 3,581.50 |
| | 679,314.00 | | 394,002.12 |


| Total | 909,812.00 | | 527,690.96 |

**EXHIBIT "B"**

**From:** "Silver, Ira" <isilver@mbafcpa.com>
**Subject: Lighthouse - Draft Mgmt Fee & Interest Templates..Internal Use Only**
**Date:** September 13, 2012 11:25:49 AM EDT
**To:** "'jmg.toyo@att.net'" <jmg.toyo@att.net>, 'Lisa Calabro'
<lcalabro@wernerholdings.com>

I have attached a draft of a template for both the interest calculation (2 Tabs)  & management fees...Please
review and send me any/all comments....Thank you

**EXHIBIT "B"**

Lighthouse Toyota
Interest Payable - Werner
August 23, 2011 - September 15, 2012

Interest Rate          5.00%
Calendar Year          365 days

| Loan Date | Loan Amount | Balance | Interest Period | Days | Interest Due |
|---|---|---|---|---|---|
| **2011** | | | | | |
| August 23, 2011 | 141,827.23 | 141,827.23 | Aug 23 - Sept 15 | 24 | 466.28 |
| Sept 16, 2011 | 50,000.00 | 191,827.23 | Sept 16 - Sept 21 | 6 | 157.67 |
| Sept 22, 2011 | 100,000.00 | 291,827.23 | Sept 22 - Oct 19 | 28 | 1,119.34 |
| October 20, 2011 | 100,000.00 | 391,827.23 | Oct 20 - Dec 31, 2011 | 71 | 3,810.92 |
| | | | | | 5,554.21 |
| **2012** | | | | | |
| January 1, 2012 | 0.00 | 391,827.23 | Jan 1 - Jan 11 | 11 | 590.42 |
| January 12, 2012 | 11,000.00 | 402,827.23 | Jan 12 - Jan 18 | 6 | 331.09 |
| January 19, 2012 | 250,000.00 | 652,827.23 | Jan 19 - Feb 16 | 30 | 2,682.85 |
| February 17, 2012 | 150,000.00 | 802,827.23 | Feb 17 - March 18 | 30 | 3,299.29 |
| March 19, 2012 | 150,000.00 | 952,827.23 | March 19 - April 18 | 31 | 4,046.25 |
| April 19, 2012 | 150,000.00 | 1,102,827.23 | April 19 - Sept 15, 201 | 149 | 22,509.76 |
| | | | | | 33,459.67 |
| | | | | | 39,013.88 |

**EXHIBIT "B"**

Lighthouse Toyota
Management Fee Computation
September, 1, 2011 - December 31, 2011
January 1, 2012 - August 31, 2012

Computation Under August, 24th , 2011 Management Agreement:

September, 1, 2011 - December 31, 2011

|  |  |  | Due Werner |
|---|---|---|---|
| September | 52,649.00 | 58.00% | 30,536.42 |
| October | 56,159.00 | 58.00% | 32,572.22 |
| November | 30,973.00 | 58.00% | 17,964.34 |
| December | 88,634.00 | 58.00% | 51,407.72 |
|  | 228,415.00 |  | 132,480.70 |
| Miscellaneous Adjustments: |  |  |  |
| Interest Expense - Werner | (5,554.21) | 58.00% | (3,221.44) |
| Interest Income - shareholders |  |  |  |
| ($250,000 @ 2.5% x 4 Months) | 2,083.00 | 58.00% | 1,208.14 |
|  | 230,498.00 |  | 130,467.40 |

January 1, 2012 - August 31, 2012

|  |  |  |  |
|---|---|---|---|
| January | 79,609.00 | 58.00% | 46,173.22 |
| February | 83,129.00 | 58.00% | 48,214.82 |
| March | 97,347.00 | 58.00% | 56,461.26 |
| April | 116,815.00 | 58.00% | 67,752.70 |
| May | 74,739.00 | 58.00% | 43,348.62 |
| June | 87,101.00 | 58.00% | 50,518.58 |
| July | 88,289.00 | 58.00% | 51,207.62 |
| August | 46,110.00 | 58.00% | 26,743.80 |
|  | 673,139.00 |  | 390,420.62 |
| Miscellaneous Adjustments: |  |  |  |
| New car losses |  |  |  |
| Interest Income - shareholders | 6,175.00 | 58.00% | 3,581.50 |
| Interest Expense - Werner | (33,459.67) | 58.00% | (19,406.61) |
|  | 645,854.33 |  | 374,595.51 |
|  |  |  |  |
| Total | 876,352.33 |  | 505,062.91 |

**EXHIBIT "B"**